SAVOY, Judge.
Plaintiffs, husband and wife, brought this suit for damages as a result of injuries suffered by plaintiff wife at the Vernon Theater in Leesville, Louisiana, on June 11, 1958, when she sat in a seat without a back and fell backwards. The insurer of the Vernon Theater, The Indemnity Insurance Company of North America, was named defendant. The wife sued for personal injuries sustained and the husband sued for medical expenses and loss of earnings of his wife.
Defendant filed an answer denying generally the allegations of plaintiff’s petition, but this was amended and it was conceded by defendant that the seat which gave rise to this action was defective due to the absence of the back, that no warning was given to the wife, and she fell backwards striking her head, thereby hurting her neck and causing pain and nausea to her person.
Plaintiffs amended their petition and asked for a trial by jury. After a lengthy trial, a verdict was rendered in favor of the wife against defendant in the sum of $20,000. The husband did not receive any award in the jury’s verdict. From this verdict and the judgment signed in accordance therewith, both defendant and plaintiff husband have appealed to this Court.
The husband complains that he should have received medical expenses incurred for his wife; that the amount claimed is not in dispute as it was stipulated to by counsel for him and the defendant. The amount of medical expenses due the husband in accordance with the stipulation is $1,375.-95.
*111 Defendant complains' of the. verdict of the jury and subsequent judgment of the district court in that plaintiff wife did not discharge the burden of proving a causal connection between the minor injury which she received on June 11, 1958, and her alleged depression, neurotic or emotional disturbance which allegedly appeared in the early part of 1959, or stated in another way, in finding that plaintiff wife proved that her neurosis was traumatic in origin; in the alternative, that should this Court agree with the verdict of the jury as to the errors set out above, that the award is excessive and should be reduced.
The record reveals that the facts of the accident are as alleged in plaintiffs’ petition. Defendant concedes that it is liable for the damages and medical expenses sustained by the wife and the husband due to the accident of June 11, 1958, but defends this case primarily on the ground that the accident of June 11, 1958, is not causally related to the mental troubles from which the wife is suffering. The record reveals further that prior to the accident in the instant case, the wife had not had psychiatric treatment, and according to her friends, she was a jolly and energetic person, and after the accident she would have crying spells, was nervous and was not the gay and energetic person that she was prior to the accident.
Mrs. Allen, plaintiff herein, was examined by numerous doctors, namely, Dr. E. A. Skarke, a general practitioner, Dr. Scott Wallace, an orthopedic surgeon, Dr. Earl Rafes, a neuro-surgeon, Dr. Percy William Bailey, a psychiatrist, Dr. Lovell B. Crain, a psychiatrist, and Dr. Charles W. Armi-stead, a psychiatrist.
Mrs. Allen was referred to Dr. Skarke by her attorney, and he saw her on three occasions, namely, October 4, November 11 and November 17, 1958. The doctor found that Mrs. Allen was suffering from a cervical strain and a sacroiliac strain. These symptoms were subjective complaints which were typical for such head injuries or contusions. The finding of low back strain was based on the presence of muscle spasm.
Mrs. Allen was next seen by Dr. Scott Wallace, an orthopedic specialist, who examined her in December of 1958 and September, 1959, on behalf of defendant. After a complete examination Dr. Wallace could find nothing physically wrong with Mrs. Allen, but was of the opinion that her problem was emotional in nature. He recalled that she had several emotional outbursts, crying frequently at the second visit, whereas she had not shown these emotional signs on the first examination.
Mrs. Allen next saw Dr. Earl Rafes, a neurological surgeon. Dr. Rafes could find nothing wrong physically with Mrs. Allen, but found she was suffering from serious mental and emotional problems, and he referred her to a psychiatrist, Dr. Percy Bailey. Dr. Bailey first saw Mrs. Allen on February 3, 1959. He found that she was emotionally disturbed, and on the next day she was admitted to a hospital in Beaumont, Texas, and shortly thereafter, she received a course of electro-shock treatments, eleven in number, the last treatment being given on February 27, 1959, she being well enough at that time to finish her treatments at the office as an outpatient.
Dr. Bailey said electro-shock therapy is treatment of electrical stimulation of the nervous system by applying an electrical stimulus to the patient’s scalp, in the frontal temple region, through metal electrodes using conducting jelly between the electrodes and the skin. It is controlled in terms in amperage and voltage and time of the stimulus by an apparatus. The patient while receiving this shock goes into a generalized convulsion. This lasts for only a few seconds. Then the patient gradually awakens, and is usually less tense. Dr. Bailey stated that the electro-shock treatment has been a main-stay in treating pathological depressions.
Mrs. Allen received as an outpatient three more of these treatments, the last being on March 7, 1959. Dr. Bailey saw plaintiff wife on several other occasions after March *112 7, 1959, but she left Beaumont due to her husband’s employment elsewhere in Texas. On July 17, 1959, he again saw Mrs. Allen and advised her to re-enter a hospital and she did. She was started on a milder form of treatment consisting of medication and sub-shock insulin treatment. Thereafter, it was again necessary for plaintiff to leave Beaumont because of her husband’s employment taking him out of the city.
Dr. Bailey was of the opinion that Mrs. Allen developed a nervous condition as a natural consequence of the injuries sustained from her brain concussion at the Vernon Theater in Leesville, Louisiana. When asked if her condition would be permanent, Dr. Bailey stated, “Well, I think it very likely could be to some degree. The reason that I say that is she required medication even now to keep her functioning in a normal fashion, or near normal fashion.”
Mrs. Allen was examined by Dr. Lovell B. Crain, a psychiatrist, at the request of defendant. He diagnosed Mrs. Allen’s trouble as psychasthenic depression. The doctor stated that people who have psychas-thenic depression are under tremendous nervous stress because of their phobias and fears that they know to be without foundation. They are under continuous stress and strain plus the fact that all of them are perfectionists and have an inferiority complex. All of these factors go together in producing extreme stress which results in depression, and depression is characterized by being low in spirit arid feeling somewhat hopeless about things getting better, by being somewhat slowed down, by looking on the dark side of everything. Dr. Crain was of the opinion that Mrs. Allen’s condition originated back in her early childhood, which probably had more to do with her trouble than the accident; that “Although it cannot be proven the accident may not have precipitated the trouble, it certainly did not cause her trouble, and could only be a precipitating factor.”
Mrs. Allen was also examined by Dr. Charles W. Armistead, a psychiatrist, at the request of the defendant. It was his opinion that Mrs. Allen was a nervous person with strong obsessive compulsive traits, that this had existed for many years dating back to childhood. Her past history of unstable marriages, frequent moves and frequent job changes all point to an unstable personality. It is his opinion that neither her present psychiatric status nor the depressive episode treated in 1959 by electroshock treatments was related to the head injury since this kind of illness is commonly seen in patients in the absence of any type of trauma. The relationship, if any, would be determinable primarily by the continuity of her illness from the time of her injury. He felt that the injury was more incidental than a causal relationship to the condition.
After considering all of the medical and lay testimony in the instant case, this Court is of the opinion that there is sufficient evidence in the record to sustain the jury finding that there was a causal connection between the accident of June 11, 1958, and Mrs. Allen’s mental disorder, and subsequent treatment thereafter. There was sufficient evidence in the record to support the finding by the jury that the accident of June 11, 1958, was a precipitating factor in the mental illness of Mrs. Allen.
We next consider the contention made by able counsel for defendant that the award made by the jury was excessive and should be reduced.
In the case of Humphries v. Delta Fire and Casualty Company (Ct.App., 1 Cir., 1959), 116 So.2d 130, the court awarded $12,000 to a wife who had been in an automobile accident and suffered what the trial judge termed a traumatic neurosis. In the Humphries case, supra, the wife did not undergo the rigorous treatment which Mrs. Allen was subjected to in the instant case. Her mental disorder is more serious than plaintiff’s in the Humphries case, supra.
It was the opinion of some of the medical experts that Mrs. Allen would require continuous medical attention and/or treatment *113 for an indefinite period. Under these circumstances we do not feel that the award of the trial court was excessive.
Since it was stipulated that Mr. Allen had expended the sum of $1,375.95 for medical expenses, the jury was in error in not awarding him that amount at the time it awarded the damages to Mrs. Allen. The judgment of the district court will be amended so as to award to Mr. Alvin R. Allen the sum of $1,375.95 for medical expenses expended by him on behalf of his wife, Mrs. Wilma Allen.
This Court might state in passing that the district judge gave a detailed and scholarly charge to the jury.
For the reasons assigned, the judgment of the district court is amended by awarding to plaintiff, Alvin R. Allen, the sum of $1,375.95, and as amended, it is affirmed.
Defendant is to pay all costs incurred in this court.
Amended and affirmed.